In re MONUMENT RECORD CORPORATION, Fred L. Foster, and Lisa L. Foster, Debtors.

Lawrence POLLACK, Trustee for Monument Record Corporation, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORP., Hooker Investments, Ltd., Arthur B. Hancock, III, Fred L. Foster, Federal Land Bank of Louisville, Defendants.

Nos. 383–00747, 383–00766 and 383–00748.
Adv. No. 386–0242.

United States Bankruptcy Court, M.D. Tennessee.

March 13, 1987.

Robert Ziegler, Kevin J. Jones, Loewenstein, Ziegler & Buffaloe, Nashville, Tenn., for debtors.

Russell H. Hippe, Jr., Trabue, Sturdivant & DeWitt, Nashville, Tenn., for F.D.I.C.

Wm. Caldwell Hancock, Nashville, Tenn., for trustee.

Bradley MacLean, Farris, Warfield & Kanaday, Nashville, Tenn., for Hooker/Hancock.

William Lamar Newport, Nashville, Tenn., for Unsecured Creditors' Committee.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

At issue is the preclusive effect of a Chapter 11 debtor-in-possession's agreed order for relief from the stay in subsequent litigation between the Chapter 11 trustee and the original moving creditor. The trustee is precluded to relitigate issues decided in the prior order.

The following constitute findings of fact and conclusions of law. Bankr.R. 7052.

### I.

These Chapter 11 cases were filed in March of 1983. Monument Record Company produces and markets recorded music. Fred Foster owns and is the force behind Monument.

At the filing, Monument and the Fosters were indebted to the Federal Deposit Insurance Corporation ("F.D.I.C.")[1] and to Hooker Investments Limited and Arthur B. Hancock ("Hooker/Hancock"). The F.D.I.C. and Hooker/Hancock have large claims and each asserts security interests in assets of Monument and the Fosters, including a "stock pledge agreement". The agreement hypothecates Monument's ownership of stock in the Combine Music Corporation and affiliated companies (the "Combine collateral"). The Combine collateral has substantial value. From the filing, the validity and extent of the security interests of the F.D.I.C. and Hooker/Hancock in the "Combine collateral" have been central to reorganization.

The committee of unsecured claim holders is active in the Monument case. Counsel for the committee was appointed in August of 1983 and has participated extensively in and out of court.

By "agreed order" entered November 20, 1984, approved by counsel for the debtors and counsel for the creditors' committee, Hooker/Hancock was denied relief from the stay conditioned upon confirmation of a plan before March 1, 1985. During 1984,

---

1. The Federal Deposit Insurance Corporation holds three promissory notes from Monument and/or the Fosters originally payable to United Southern Bank of Nashville, Tennessee, in the principal amounts of $1,625,000.00, $1,885,011.36 and $850,000.00. The United Southern Bank failed.

at least three plans were proposed, each offering substantial payment of all claims. By early 1985 all plans had evaporated. Hooker/Hancock received relief from the stay.

On March 27, 1985, the F.D.I.C. moved for relief from the stay. The motion was served on the debtor-in-possession and the creditors' committee. The pretrial order set a preliminary hearing for April 25, 1985 and ordered the parties to prepare a joint pretrial statement. The stay was continued to a final hearing on June 18, 1985.

On June 14, 1985, the debtors and the F.D.I.C. submitted their joint pretrial statement. The F.D.I.C. argued lack of equity, lack of adequate protection and the failure of all reorganization efforts. That Hooker/Hancock asserted a security interest in the F.D.I.C.'s collateral and had been granted relief from the stay was cited as "cause" for relief. Among the assets the F.D.I.C. sought to foreclose upon was described "the stock of Combine Music Corporation (plus varying percentages of stock in related corporations) (hereinafter the "Combine stock")."

The debtors' portion of the pretrial statement argued that the F.D.I.C.'s notes were unenforceable for lack of consideration. The debtors attacked the F.D.I.C.'s security interests as preferences under § 547 and as fraudulent transfers under § 548. The failure to pay sufficient recording taxes was asserted to invalidate the security interests under state law.

At the final hearing on June 18, 1985, counsels were present for the debtors, the F.D.I.C., Hooker/Hancock, the creditors' committee, and for other interested parties. The affidavit of counsel for the creditors' committee states the perception that debtor-in-possession was unable to seriously contest the F.D.I.C.'s motion and the F.D.I.C. was likely to prevail "across the board ... the ball game appeared to be about over.... what was about to happen was that the F.D.I.C. was going to get complete stay relief in both the Foster and the Monument cases, that the F.D.I.C. would then simply foreclose upon all assets in both cases and bid in the amount of its debt, and that, in consequence, for all practical purposes, the Monument Chapter 11 case was about to end with no distribution to anyone except the F.D.I.C." Affidavit of William Lamar Newport, Exhibit 4, at p. 4.

During an early recess in the final hearing, counsels commenced settlement negotiations. After discussions that day and subsequent days and the exchange of proposed orders, an "agreed order" was entered on June 21, 1985. The order was approved for entry by the F.D.I.C., the debtors, the creditors' committee and Hooker/Hancock.

The order of June 21, 1985, recites that the F.D.I.C. asserts a security interest in the "Combine collateral" and the order validates that security interest as follows:

IT IS ACCORDINGLY ORDERED that the debtors and each of them are indebted to F.D.I.C. pursuant to the above referenced promissory notes and said aggregate indebtedness is secured by a valid first lien security interest in the Combine collateral and proceeds derived therefrom, subject only to the possible liens of Arthur B. Hancock, III, and Hooker Investments, Ltd. discussed herein below and it is further ORDERED that the stay of 11 U.S.C. § 362 as to the Combine collateral is hereby terminated for cause....

In detail, the order requires application of the proceeds from the sale of the Combine collateral to retirement of identified notes. The parties agreed that the Combine collateral would be sold first and, if not paid in full, the F.D.I.C. would be required to seek further stay relief as to other collateral. The order acknowledges the competing lien of Hooker/Hancock and "the relative priority of the F.D.I.C. and Hooker/Hancock's security interest in the Combine collateral is hereby reserved for later resolution...." The final paragraph states:

IT IS FURTHER ORDERED that copies of this order shall be served on all creditors in these cases and shall become final if no objection and request for a hearing is filed within 10 days of its entry.

Notice was given to all creditors. There were no objections. *See* Bankr.R. 9019.

On October 17, 1985, the Monument creditors' committee moved for the appointment of a trustee. Monument filed a written response in opposition. At the hearing, Monument withdrew its objection and a trustee was appointed on November 1, 1985.

On June 6, 1986, the trustee filed a "verified motion" under Bankruptcy Rule 9024 and Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from the order of June 21, 1985. The motion relates that on June 4, 1986 the trustee reviewed records at Fred Foster's home and found stock certificates representing ownership interests in several companies included in the "Combine collateral." The trustee alleged that these stock certificates were in Mr. Foster's possession at the Monument filing, thus "the June 21, 1985 Agreed Order was entered based upon either 'mistake, inadvertence, surprise or excusable neglect ... fraud, misrepresentation ... or other misconduct' ... and in any event good reason exists to set aside the order...." The trustee requested an expedited hearing because the F.D.I.C. was in final preparation for sale of the Combine collateral.

After several days of evidence, including testimony by counsel for the creditors' committee, the F.D.I.C. and others, the trustee's Rule 60(b) motion was denied.[2] This court found that the validity and extent of the F.D.I.C.'s security interest in the Combine collateral was at issue at the final hearing on the F.D.I.C.'s request for relief from the stay. The stock certificates later found by the trustee were identified in the pretrial statement. No party claimed or proved misrepresentation or fraud. There were no deficiencies of notice or lost opportunity to participate in the relief stay process. Counsel for the creditors' committee and others conducted discovery and examined the collateral files of the F.D.I.C. and its predecessor bank. The evidence demonstrated "there was a mistaken assumption that the F.D.I.C. had the stock." This was a mistake as to a matter which the parties contemplated and which

the parties knowingly assumed the risk. Detrimental reliance by the F.D.I.C. on the finality of the June 1985 order was demonstrated.

The order denying Rule 60(b) relief was appealed. The United States District Court for the Middle District of Tennessee affirmed. *Pollack v. FDIC (In re Monument Records Corp.)*, No. 8–86–0675 (M.D. Tenn. November 25, 1986).

On July 2, 1986 the Monument trustee filed this adversary proceeding complaining that the F.D.I.C.'s security interest in the "Combine collateral" was unperfected at the filing and is defeated by 11 U.S.C. § 544. The trustee asserts that the F.D.I.C.'s lien is voidable pursuant to 11 U.S.C. § 506(d). The trustee attacks the F.D.I.C.'s security interest under 11 U.S.C. § 548. The trustee requests "marshalling orders" to adjust the liquidation of collateral. In the alternative, the trustee seeks "reconsideration" of the F.D.I.C. and Hooker/Hancock claims pursuant to 11 U.S.C. § 502(j).

The F.D.I.C. moved for partial summary judgment that the order of June 21, 1985 precludes relitigation of its rights in the Combine collateral.

## II.

The United States Court of Appeals for the Sixth Circuit states the conditions for application of *res judicata* and collateral estoppel in *Marlene Industries Corp. v. NLRB*, 712 F.2d 1011, 1015–16 (6th Cir. 1983) (quoting *Anchor Motor Freight, Inc. v. International Brotherhood of Teamsters*, 700 F.2d 1067, 1069–70 (6th Cir. 1983)):

This Court recently reiterated a summary of the related doctrines of res judicata and collateral estoppel as set forth in *Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and

---

**2.** The creditors' committee also filed a motion seeking Rule 60(b) relief from the June 1985 order. The creditors' committee's motion was consolidated with the motion of the trustee.

res judicata, is that a *"right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...."* *Southern Pacific R. Co. v. United States,* 168 U.S. 1, 48–49 [18 S.Ct. 18, 27, 42 L.Ed. 355] (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. [citations omitted] Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. *Southern Pacific R. Co.,. supra,* 168 U.S. at 49, 18 S.Ct. at 27; *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. [footnote omitted]

*United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1180 (6th Cir.1982) (emphasis added). *See also Bronson v. Board of Education of the City School District of the City of Cincinnati,* 687 F.2d 836, 840–41 (6th Cir.1982).

### A. Court of Competent Jurisdiction

Subject matter jurisdiction of the F.D.I.C.'s request for relief from the stay, the trustee's Rule 60 challenge and this complaint is granted by 28 U.S.C. §§ 1334 and 157(b)(2)(G), (K), and (O).

### B. Valid Final Judgment

The June 21, 1985 order was a valid final judgment. The F.D.I.C.'s request for relief from the stay commenced a contested matter governed by Bankruptcy Rule 9014. Bankr.R. 4001(a). Bankruptcy Rule 9014 makes applicable to contested matters Bankruptcy Rule 7054 which incorporates Rule 54(a) of the Federal Rules of Civil Procedure. "Judgment" is defined by Rule 54(a) to include "any order from which an appeal lies."[3] Fed.R.Civ.P. 54(a). The courts of appeals considering the issue have held that orders upon requests for relief from the stay are final and reviewable by appeal. *Packerland Packing Co., Inc. v. Griffith Brokerage Co. (In re Kemble),* 776 F.2d 802, 13 B.C.D. (CRR) 1078 (9th Cir.1985) (appeal lies to circuit court from order granting relief from the automatic stay); *Crocker Nat'l Bank v. American Mariner Indus. (In re American Mariner Indus.),* 734 F.2d 426, 429, 12 B.C.D. (CRR) 227, 228 (9th Cir.1984) ("decisions of the bankruptcy courts granting or denying relief from the automatic stay under § 362(d) are final decisions reviewable by this court"); *Aetna Life Ins. Co. v. Leimer (In re Leimer),* 724 F.2d 744, 11 B.C.D. (CRR) 618 (8th Cir.1984) (order denying relief from the stay functions as a permanent injunction and is a final order); *Moxley v. Comer (In re Comer),* 716 F.2d 168, 11 B.C.D. (CRR) 131 (3d Cir.1983) (order granting relief from the stay completes the litigation and is a final order); *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982) (order denying relief from the stay is final order); *In re Taddeo,* 685 F.2d 24 (2d Cir.1982) (order denying relief from the stay is a final order). *See*

---

3. The order of June 21, 1985 was filed pursuant to Rule 58 and was entered by the clerk on the civil docket pursuant to Rule 79, Fed.R.Civ.P.

*Growth Realty Cos. v. Regency Woods Apartments (In re Regency Woods Apartments, Ltd.),* 686 F.2d 899 (11th Cir.1982).

The June 21, 1985 order is a valid final judgment notwithstanding entry by agreement of the parties. Though there is some disagreement,[4] it is the modern general rule that a consent judgment merits *res judicata* effect[5] and a consent judgment has issue preclusive effect where the parties intend that findings be preclusive.[6]

**4.** As one commentator explains:

> To the extent that individual issues or entire judgments rest on admission or consent, however, a major element of preclusion is missing. Although it may remain appropriate to foreclose further litigation of particular issues or entire claims, such consequences must rest on the effects of pleading and discovery rules or the effect of private agreements. It might accordingly be better to discard the res judicata vocabulary of preclusion by judgment, for fear that incomplete analogies may lead to inadequate results. Courts nonetheless persist in speaking of res judicata and collateral estoppel, or claim and issue preclusion. Little harm is done so long as the proper questions are asked, ....

18 Wright, Miller & Cooper, *Federal Practice and Procedure* 381 (1981) (footnotes omitted).

To the same effect:

> Courts have frequently had occasion to consider whether a particular judgment rendered with the consent of the parties should be given collateral estoppel effect. Though the decisions are divided, there is considerable authority in support of the proposition that a consent judgment, including a judgment on an agreement, should not be deprived of collateral estoppel effect by the fact that it was rendered upon the consent of the parties rather than as the result of an adversary trial. But the courts frequently rely on a broad statement of this general proposition ... so that the rationale underlying its application is obscured. And a considerable number of cases, as well as recent writers on the subject, reject the proposition as unsound.

1B Moore, *Federal Practice* 799–801 (1984) (footnotes omitted).

**5.** *See* Annotation, *Modern Views of State Courts as to Whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect,* 91 A.L.R.3d 1170, 1176 (1979) (state cases); Annotation, *Res Judicata as Affected by Fact that Former Judgment was Entered by Agreement or Consent—Federal Cases,* 97 L.Ed. 1188, 1190 (1953) (federal cases) ("[I]t seems well settled, as a general proposition, that a judgment or a decree, though entered by consent or agreement of the parties, is res judicata to the same extent as if entered after contest."). In antitrust and Federal Trade Commission litigation there has been much discussion that consent judgments partake in part of the quality of contracts and in part of fully judicial acts. *See United States v. ITT Continental Banking Co.,* 420 U.S. 223, 43 L.Ed.2d 148, 95 S.Ct. 926 (1975); Annotation, *Supreme Court's Views Regarding Consent Judgments, Decrees or Orders in Proceedings Under Federal Antitrust Laws or Federal Trade Commission Act,* 43 L.Ed.2d 807 (1976).

**6.** This is one possible statement of the holding in *United States v. International Bldg. Co.,* 345 U.S. 502, 506, 97 L.Ed. 1182, 1188, 73 S.Ct. 807, 809, *reh'g denied* 345 U.S. 978, 97 L.Ed. 1392, 73 S.Ct. 1120 (1953) ("A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties.").

This is the position adopted by the American Law Institute. Restatement (Second) of Judgments § 27 Comment E (1980) ("The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention.").

As Moore explains:

> [C]ollateral estoppel may result from a consent judgment on either of two theories: the first, that findings of the court are necessarily inferred from a consent judgment; the second, that the consent of the parties to be precluded from subsequent assertion of certain claims is conclusively determined by the consent judgment....
>
> ....
>
> ... [W]e believe that a preclusion ought to result from a judgment on an agreement, to the extent that the parties agree to be precluded.

1B Moore, *Federal Practice,* 811, 814 (1984) (footnotes omitted).

Wright concurs:

> The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties....
>
> ... Preclusion is appropriate if it is clear that the parties intended it....

18 Wright, Miller & Cooper, *Federal Practice and Procedure,* 384–388 (1981) (footnotes omitted).

*See* Annotation, *Res Judicata as Affected by Fact that Former Judgment was Entered by Agreement or Consent—Federal Cases,* 97 L.Ed. 1188, 1191 (1953) ("The extent to which a judgment or decree entered by consent is conclusive in a subsequent action should be governed by the intention of the parties, as expressed in the agreement which is the basis of the judgment and gathered from all the circumstances, ...."); Annotation, *Modern Views of State Courts as to Whether Consent Judgment is Entitled to Res*

The court of appeals for this circuit recognizes the collateral estoppel effect of consent judgments. In *Harrison v. Bloomfield Bldg. Indus., Inc.,* 435 F.2d 1192 (6th Cir.1970) Kesler sued Bloomfield on a note. Bloomfield counterclaimed that fraud and securities violations prohibited collection. A judgment by consent was entered in favor of Kesler. Later, Bloomfield was sued by Harrison and Johnson on a second note. Bloomfield defended by alleging fraud and securities violations by Kesler. The Sixth Circuit held that the consent judgment in Kesler's favor in the first lawsuit collaterally estopped Bloomfield to assert Kesler's conduct as a defense to the second note:

> [W]e agree with the trial court that the conduct alleged to constitute the violations was actually at issue [in the prior case] by virtue of Bloomfield's counterclaim and Kesler's reply.... As to that conduct, the slate was wiped clean by the stipulated judgment....
>
> ..., The [prior] judgment precludes Bloomfield from relying on that conduct as a defense to Harrison and Johnston's recovery on the note....

435 F.2d at 1195–96. *See Warner v. Tennessee Prods. Corp.,* 57 F.2d 642, 643 (6th Cir.1932) ("[T]he rule could not well be otherwise, that [the prior judgment], although by consent, constitutes an estoppel by judgment binding upon the parties or their privies, and that all questions of law and fact distinctly put in issue and determined by [the prior judgment] cannot be disputed in a subsequent suit between such parties or their privies."); *Kershaw v. Federal Land Bank,* 556 F.Supp. 693, 697 (M.D.Tenn.1983) ("consent judgments ordinarily are intended to preclude any further litigation on the claims presented.... [A] compromise agreement is conclusive as to

matters which the parties have fairly intended to include within its terms, even claims arising subsequent to settlement are barred if they were in the contemplation of the party assenting to the settlement."); *In re Iota Indus., Inc.,* 42 B.R. 285, 287 (Bankr.S.D.N.Y.1984) (applying *Kershaw* to a bankruptcy claim dispute, "[i]n construing the ... settlement agreement the court is mindful of the fact that the effect ... is governed by the intentions of the parties."). *See also Vulcan, Inc. v. Fordees Corp.,* 658 F.2d 1106 (6th Cir.1981); *Schlegel Mfg. Co. v. USM Corp.,* 525 F.2d 775 (6th Cir.1975), *cert. denied,* 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763 (1976).

Consent decrees, stipulations, and agreed judgments are routinely enforced as final orders in the United States Bankruptcy Courts. *See In re Borchardt,* 47 B.R. 879, 881 (Bankr.D.Minn.1985) (stipulation for relief from the stay); *In re Polries Bros.,* 49 B.R. 669, 673 (Bankr.D.N.D.1985) (stipulation for automatic termination of the stay); *In re Sando,* 30 B.R. 474, 476 (E.D.Pa. 1983) (consent order for relief from the stay); *B.O.S.S. Partners I v. Tucker (In re B.O.S.S. Partners I),* 37 B.R. 348, 350–51 (Bankr.M.D.Fla.1984) (stipulation for relief from the stay). *But see In re Arthishon,* 39 B.R. 890, 11 B.C.D. (CRR) 1271 (Bankr. D.Minn.1984) (provision delaying effect of relief stay consent order for thirty days evidences intent that the order not be final).

Finality of the June 21, 1985 order is not obstructed by the trustee's collateral attack under Rule 60. Once the period for seeking appellate review expires under Bankr.R. 8002, Rule 60 of the Federal Rules of Civil Procedure controls alteration, modification or suspension of final bankruptcy court orders.[7] Bankr.R. 9024.

---

*Judicata or Collateral Estoppel Effect,* 91 A.L. R.3d 1170, 1187 (1979) ("[A]lthough a consent judgment is generally not entitled to collateral estoppel effect ... this rule is subject to exception where the parties have manifested their intention that the judgment have collateral estoppel effect.").

**7.** It has been said that the leading case on the application of Rule 60 to bankruptcy proceedings is *Otte v. Manufacturers Hanover Commer-*

*cial Corp. (In re Texlon Corp.),* 596 F.2d 1092 (2d Cir.1979). *See In re Georgia Steel, Inc.,* 25 B.R. 790, 794 (Bankr.M.D.Ga.1982). The references in *Texlon* to *Wayne United Gas Co. v. Owens-Illinois Glass Co.,* 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557 (1937), and to *Pfister v. Northern Illinois Fin. Corp.,* 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146 (1942) suggest that the Second Circuit was applying broader principles than Rule 60. This court expresses no opinion whether final

See *In re Whitney-Forbes, Inc.*, 770 F.2d 692 (7th Cir.1985) (Bankruptcy Rule 9024 and Rule 60(b) of Fed.R.Civ.P. determine attack on confirmed bankruptcy sale); *In re Chung King, Inc.*, 753 F.2d 547 (7th Cir.1985) (applying Rule 60 to protect finality of confirmed bankruptcy sale); *In re Emergency Beacon Corp.*, 48 B.R. 356 (S.D.N.Y.1985) (equitable relief from final judgment confirming Chapter XI plan is controlled by F.R.Civ.P. 60(b)); *Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754 (2d Cir.1981) (Rule 60 governs the finality of bankruptcy court order authorizing certificate of indebtedness). Rule 60 is the avenue for relief from a final judgment entered by a bankruptcy court upon consent of the parties. *See In re FCX, Inc.*, 54 B.R. 833 (Bankr.E.D.N.C.1985) (Rule 60 may permit relief from a stipulated judgment for the use of cash collateral and the granting of liens); *Georgia Steel, Inc. v. Citizens & Southern Nat'l Bank (In re Georgia Steel Inc.)*, 25 B.R. 790 (Bankr.M.D.Ga.1982) (consent order granting liens can be vacated or amended pursuant to Rule 60(b)).

The trustee's Rule 60 motion was denied. That denial was affirmed on appeal. There is no stay or other impediment to the denial of Rule 60 relief. The June 21, 1985 order is a "final order" for preclusion purposes.

### C. PARTIES OR PRIVITIES

■ Collateral estoppel bars relitigation where the subsequent action involves the same parties or parties in privity with the parties to the prior suit. *Anchor Motor Freight, Inc. v. International Brotherhood of Teamsters*, 700 F.2d 1067, 1069 (6th Cir.1983); *Harrison v. Bloomfield Bldg. Indus., Inc.*, 435 F.2d 1192, 1195 (6th Cir.1970); *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106 (6th Cir.1981). As the Sixth Circuit explains:

Whether privity exists in a given case is a question of fact. *Harrison v. Bloomfield Bldg. Ind., Inc.*, 435 F.2d 1192 (6th Cir.1970); *Astron Ind. Assoc. v. Chrys-ler Motors Co.*, 405 F.2d 958 (5th Cir. 1968); *Crane Boom Life Guard Co. v. Saf-T Boom Co.*, 362 F.2d 317 (8th Cir. 1966), *cert. denied*, 386 U.S. 908, 87 S.Ct. 853, 17 L.Ed.2d 782 (1966)....

... 'Privity' is an ambiguous term, a shorthand designation for those persons who 'have a *sufficiently close relationship* with the record parties to be bound by the judgment.' Note, *Developments in the Law—Res Judicata*, 65 Harv.L. Rev. 818, 856 (1952) (emphasis added). *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d at 1109. *See Harrison v. Bloomfield Bldg. Indus., Inc.*, 435 F.2d at 1195.

A definition of "privity" for preclusion purposes is elusive:

"[P]rivity" itself is an ambiguous and protean term; binding a non-party by finding it in privity with a party to a prior action amounts to little more than proof of assertion. As Judge Goodrich wrote, concurring in *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir.), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950):

Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata.

*See also Nash County Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 494 (4th Cir.1981); *Developments in the Law—Res Judicata, supra*, 65 Harv.L.Rev. at 856; *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106 (6th Cir.1981); *Aerojet General Corp. v. Askew*, 511 F.2d 710 (5th Cir.1975), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). *Rixon Inc. v. Racal-Milgo, Inc.*, 551 F.Supp. 163, 168 (D.Del.1982).

■ The Sixth Circuit recognizes that "[f]ederal courts are no longer bound by rigid definitions of the parties or their privies for purposes of applying *res judicata* or collateral estoppel." *Vulcan, Inc. v.*

---

orders of a bankruptcy court are subject to broader attack than admitted by Rule 60. There are good reasons to resist resurrection of the "administrative orders" concept which pre-existed the modern bankruptcy code and rules.

*Fordees Corp.*, 658 F.2d at 1111. It is well established that "one interest sufficient to bring a non-party within the ambit of *res judicata* is a legal duty, right, or interest dependent wholly or in part on the outcome of a lawsuit." *Id.* at 1110. A "derivative successive interest to the same property right" may be sufficient. *Id.* at 1111. "Identity of interests" has been equated to privity. *Harrison v. Bloomfield Bldg. Indus., Inc.*, 435 F.2d at 1195. Privity exists where "successive parties ... adequately represent the same legal interests." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 301 (7th Cir.1985). That the prior and present parties have similar incentives, powers and opportunities to investigate and litigate is indicative of privity. *Id.* at 301–04. *See In re Regal Constr. Co., Inc.*, 28 B.R. 413, 417 (Bankr.D.Md.1983) (Surety had same right and power to assert defenses now available to the debtor.).

■ The interests of the Monument estate and its creditors were represented in the 1985 relief stay litigation by the debtor-in-possession and the creditors' committee. During the debtor-in-possession period of a Chapter 11 case, the Bankruptcy Code positions the debtor-in-possession and the creditors' committee to protect the same legal interests as a trustee. 11 U.S.C. § 1107(a) codifies this relationship between the debtor-in-possession and the trustee:

> Subject to any limitations on a trustee serving in a case under this chapter [11 USCS §§ 1101 *et seq.*], and to such limitations or conditions as the court prescribes, *a debtor in possession shall have all the rights*, other than the right to compensation under section 330 of this title [11 USCS § 330], *and powers, and shall perform all the functions and duties*, except the duties specified in sections 1106(a)(2), (3), and (4) of this title [11 USCS § 1106(a)(2), (3), and (4) ], *of a trustee serving in a case under this chapter* [11 USCS §§ 1101 *et seq.*].

11 U.S.C. § 1107(a) (1982 ed. & Supp. II 1984) (emphasis added). The legislative history to § 1107(a) confirms the alignment of trustees and debtors-in-possession:

> This section places a debtor in possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a chapter 11 trustee. He is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties). He is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 116 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 404 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5902, 6360. *See In re Philadelphia Athletic Club, Inc.*, 17 B.R. 345, 347 n. 7 (Bankr.E.D.Pa.1982). Bankruptcy Rule 9001(10) defines trustee to include "a debtor in possession in a chapter 11 case."

The Sixth Circuit has recognized the congruence of duties and fiduciary responsibilities between the debtor-in-possession and trustee:

> A debtor in possession is a debtor who continues in possession of his property where no receiver or trustee is appointed.... A debtor in possession has all the title and exercises all the powers of a trustee who is appointed under the Bankruptcy Act....
>
> The duties of a debtor in possession are similar to those of a trustee in bankruptcy.... [H]e does have the broad duties incidental to his title, possession, and powers as debtor in possession.... [A] debtor in possession has the duty to protect and conserve the property in his possession for the benefit of creditors....
>
> ... The principles governing the liability of a bankruptcy trustee are applicable to a debtor in possession.

*Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461–62 (6th Cir.1982) (citations omitted). *See In re Roblin Indus., Inc.*, 52 B.R. 241 (Bankr.W.D.N.Y.1985) (A debtor in possession, like a trustee, is a fiduciary of each creditor of the estate.); *The Official Creditors Committee v. Alloy Automotive Co. (In re Wesco Products Company)*, 22 B.R. 107, 9 B.C.D. (CRR) 400 (Bankr.N.D.Ill.1982) (The debtor-in-posses-

sion stands in the shoes of a trustee and owes fiduciary duties to all creditors.). *See also Wolf v. Weinstein*, 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963) (Officers or managing employees of a debtor occupy fiduciary positions during the reorganization period.).

The debtor-in-possession has power to attack the validity of liens for the benefit of creditors. 11 U.S.C. §§ 1107, 502, 506, 544, 545, 547, 548, etc. *See Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 67 B.R. 899 (Bankr.E.D.Tenn. 1986); *Yellowhouse Machinery Co. v. Mack (In re Hughes)*, 704 F.2d 820, 10 B.C.D. (CRR) 693 (5th Cir.1983); *In re E. Paul Kovacs & Co., Inc.*, 16 B.R. 203 (Bankr.D.Conn.1981).

The courts recognize that the acts of the debtor-in-possession generally bind a subsequently-appointed trustee. In *In re Philadelphia Athletic Club, Inc.*, 17 B.R. 345 (Bankr.E.D.Pa.1982), a stipulation by a debtor-in-possession in settlement of a first mortgagee's relief stay request was held binding on the Chapter 11 trustee:

> We conclude that the trustee is a successor to the debtor in possession and is, in general, bound by the terms of any contract executed by the debtor while it was the debtor in possession.... There is no question that the debtor in possession herein had the right and power to enter into the [stipulation for relief from the stay].... To hold that such a stipulation is not binding on the estate after the appointment of a trustee would greatly impair the ability of the debtor in possession to conduct its business because it would discourage third parties from dealing with the debtor in possession for fear that the court would later appoint a trustee and declare that the actions taken by the debtor in possession are invalid and not binding on the trustee. Such a result is inconsistent with the purpose of chapter 11 of the Code to allow the debtor in possession to conduct its business and formulate a successful plan of reorganization, if possible. Although there

might be occasions when the court should scrutinize actions taken by and/or contracts made by a debtor while in possession (as, for example, where there is evidence of fraud or prejudice to the estate), there are no allegations in this case that the actions of the debtor in entering into the first stipulation were fraudulent or in any way not of benefit to the estate. Therefore, we conclude that the trustee is bound by the terms of that first stipulation.

*Id.* at 347 (citations omitted). *See In re Philadelphia Athletic Club, Inc.*, 20 B.R. 325 (Bankr.E.D.Pa.1982); *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.*, 67 B.R. 899 (Bankr.E.D.Tenn. 1986) (debtor-in-possession's erroneous decision to treat a claim as secured for purposes of a confirmed Chapter 11 plan binds a subsequently appointed trustee); *Seidle v. GATX Leasing Corp.*, 45 B.R. 327 (S.D. Fla.1984) (Trustee is bound by debtor-in-possession's stipulation because trustee is successor to the debtor-in-possession); *Landvoight, Inc. v. Williams (In re Williams)*, 40 B.R. 366, 11 B.C.D. (CRR) 1338 (Bankr.D.Md.1984) (after conversion, relief from the stay granted during reorganization phase is effective against the Chapter 7 trustee).

The creditors' committee is empowered to protect the interests of unsecured claim holders. In every Chapter 11 case, the bankruptcy court is mandated to "appoint a committee of creditors holding unsecured claims." 11 U.S.C. § 1102(a)(1) (1982 ed. & Supp. II 1984).[8] The committee can employ attorneys, accountants and agents. 11 U.S.C. § 1103(a) (1982 ed. & Supp. II 1984). Section 1103(c) entitles the committee to:

> (1) consult with the trustee or debtor in possession concerning the administration of the case;
>
> (2) *investigate the acts, conduct, assets, liabilities, and financial condition of the debtor*, the operation of the debtor's business and the desirability of the continuance of such business, *and any oth-*

---

**8.** After the 1986 amendments, appointment of a committee of creditors rests with the United States Trustee.

*er matter relevant to the case or to the formulation of a plan;*

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

(4) *request the appointment of a trustee* or examiner under section 1104 of this title [11 USCS § 1104]; and

(5) *perform such other services as are in the interest of those represented.*

11 U.S.C. § 1103(c) (1982 ed. & Supp. II 1984) (emphasis added). The committee "may raise and may appear and be heard on any issue." 11 U.S.C. § 1109(b). Notice to the committee pursuant to Bankruptcy Rule 2002(i) may satisfy the notice to creditors requirement imposed by various sections of the Code. *See In re Photo Promotion Assocs., Inc.,* 53 B.R. 759, 763 (Bankr.S.D.N.Y.1985) (notice to and consent by creditors' committee to post-petition financing is adequate notice to the holder of an unsecured claim). *See also In re American Resources Management Corp.,* 51 B.R. 713 (Bankr.D.Utah 1985) (discussing binding effect of stipulation by creditors' committee to a § 364(c) borrowing).

Where the validity of a lien is at issue, the interests of the unsecured creditors' committee converge with those of a trustee. The creditors' committee can police claim holders. 11 U.S.C. § 502(a) (1982 ed. & Supp. II 1984). If the debtor-in-possession fails or refuses to act, the committee can attack the validity of liens and avoid transfers. *Committee of Unsecured Creditors v. Monsour Medical Center,* 5 B.R. 715, 717–18, 6 B.C.D. (CRR) 886, 888 (Bankr.W.D.Pa.1980) ("[u]nder [the former Bankruptcy Act], implied authority to sue was an important form of creditor protection in cases where a trustee (or debtor-in-possession) unjustifiably failed to bring suit.... [A] creditors' committee's implied authority to sue to avoid a preference or fraudulent transfer continues under the Code."); *Unsecured Creditors' Committee v. Farmers Savings Bank (In re Toledo Equip. Co., Inc.),* 35 B.R. 315, 319, 11

B.C.D. (CRR) 832, 834 (Bankr.N.D.Ohio 1983), ("§§ 1103(c)(5) and 1109(b) impliedly authorize a creditor's committee to bring an action if, in its discretion, it would benefit the estate, and if the debtor-in-possession has unjustifiably failed to prosecute the case."); *Unsecured Noteholders' Comm. v. First Nat'l Bank & Trust Co. (In re Amarex, Inc.),* 36 B.R. 59, 62, 11 B.C.D. (CRR) 819, 820 (Bankr. W.D.Okla. 1984) (With court permission and where "the debtor abuses its discretion in its role as trustee for the estate" a committee may commence avoidance actions.); *Official Creditors' Comm. v. Alloy Automotive Co. (In re Wesco Prods. Co.),* 22 B.R. 107, 9 B.C.D. (CRR) 400 (Bankr.N.D.Ill.1982) (Committee can sue a lender for fraud but right to sue is limited where the debtor-in-possession is acting in good faith and performing its duties.). *See Chemical Separations Corp. v. Foster Wheeler Corp. (In re Chemical Separations Corp.),* 32 B.R. 816, 11 B.C.D. (CRR) 1029 (Bankr.E.D. Tenn.1983); *In re Evergreen Valley Resort, Inc.,* 27 B.R. 75 (Bankr.D.Me.1983); *Gander Mountain, Inc. v. Impact Indus., Inc. (In re Gander Mountain, Inc.),* 29 B.R. 260 (Bankr.E.D.Wis.1983); *Docter, Docter & Salus v. United States (In re Abingdon Realty Co.),* 21 B.R. 290 (Bankr. E.D.Va.1982); *In re Allbrand Appliance & Television Co., Inc.,* 24 B.R. 125 (Bankr. S.D.N.Y.1982); *Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil, Inc.),* 689 F.2d 445 (3d Cir.1982) (creditors' committee permitted to intervene in an adversary proceeding).

Monument and its creditors' committee had incentive and opportunity to litigate the F.D.I.C.'s security interests in the Combine collateral. The parties opposing relief from the stay realized the F.D.I.C. was threatening to liquidate these estates to the exclusion of all other claim holders. The creditors' committee and debtor-in-possession exercised their incentives to litigate through submissions to the court, attendance at hearings and involvement in the settlement negotiation. The legal interests a trustee would have asserted were asserted by the debtor-in-possession and credi-

tors' committee. Privity is established for preclusion purposes.

## D. RIGHT, QUESTION, OR FACT AT ISSUE AND NECESSARILY DETERMINED

■ Collateral estoppel affects issues actually and necessarily determined by the prior judgment. *Anchor Motor Freight, Inc. v. International Brotherhood of Teamsters*, 700 F.2d 1067 (6th Cir.1983). "Actually and necessarily determined" may consist of judicial resolution of underlying facts which constitute or give rise to causes of action. *Harrison v. Bloomfield Bldg. Indus., Inc.*, 435 F.2d 1192 (6th Cir. 1970). Where the prior judgment is by consent, intent of the parties is important. *See* note 6 *supra.*

■ The June 21, 1985 judgment contains ample evidence of the parties' intent to confirm the F.D.I.C.'s security interest in the Combine collateral. The order identifies the Combine collateral in minute detail. The order recites that the F.D.I.C. has a "valid first lien security interest in the Combine collateral and proceeds derived therefrom." Recognition of the possible exception to this first lien in favor of Hooker/Hancock demonstrates focus on the lien rights of the F.D.I.C. and intent to effect validation of those rights. The parties permitted the F.D.I.C. to foreclose upon the Combine collateral. The parties agreed to the sequence of liquidation and the precise application of proceeds. The factual predicate to the relief granted in the 1985 order is the validity of the F.D.I.C.'s security interest in the Combine collateral. That predicate was actually at issue and determined.

The trustee contends by brief that "valid," as used to describe the F.D.I.C.'s security interest, does not include "perfection." The plain meaning of the phrase "valid first lien security interest" is a rejection of the trustee's position. The trustee's imaginative argument is also inconsistent with the document. If the parties did not intend to recognize the effectiveness of the F.D.I.C.'s security interest in the Combine collateral, then the provisions permitting the F.D.I.C. to liquidate the Combine collateral and to apply the proceeds to its notes become nonsensical. A simple and coherent interpretation is possible: everyone intended to adjudicate the F.D.I.C.'s security interest in the Combine collateral (except as reserved in the order).

The circumstances surrounding the 1985 order support that the parties intended judicial resolution of the F.D.I.C.'s lien.[9] The depositions and other evidence show that all counsels focused on the F.D.I.C.'s lien. The debtor-in-possession and the creditors' committee negotiated for and received concessions from the F.D.I.C. The F.D.I.C. received a declaration of the validity of its security interest. The actions by the F.D.I.C. in reliance on the 1985 order support that the parties intended to resolve the effectiveness of the F.D.I.C.'s security interest.[10]

### III. EFFECT OF 11 U.S.C. § 502(j)

■ Section 502(j) of the Code does not interrupt application of preclusion principles in this case. Section 502(j) provides in part:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.

---

**9.** As a general rule, the federal courts are reluctant to engage in "ad hoc examination of valid consent decrees". *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1111 (6th Cir.1981). As the Sixth Circuit explains:

[N]egotiations for a consent decree invariably call for reciprocal compromises—each party relinquishes something it might have won had it proceeded with the litigation.... We note that consent decrees are subject to a sufficient degree of judicial supervision to protect the

parties from coercion and economic overreaching.

*Id.* at 1111 (citations omitted). However, to determine the preclusive effect of a *consent* judgment, the district court for this district, in *Kershaw v. Federal Land Bank*, 556 F.Supp. 693 (M.D.Tenn.1983), considered the terms of the decree and the circumstances surrounding its formation.

**10.** Reliance by the F.D.I.C. and the facts in support were found following the Rule 60 hearing.

11 U.S.C. § 502(j) (1982 ed. & Supp. II 1984).

The terms "cause" and "equities of the case" are not defined. The Bankruptcy Appellate Panel for the Ninth Circuit has referenced Rule 60 of the Federal Rules of Civil Procedure to determine when reconsideration is appropriate under § 502(j). *Sentry Fin. Serv. Corp. v. Pitrat (In re Resources Reclamation Corp.)*, 11 B.C.D. (CRR) 347 (9th Cir.1983). *See* 1 *Norton Bankruptcy Law & Practice* Part 28 at 20 (1985) (Movant for reconsideration must meet a burden "similar to the burden on a party seeking a reconsideration of a final order of the court.").

Neither the legislative history of § 502(j) nor the case law interpreting its predecessor, § 57(k) of the former Bankruptcy Act, indicates intent to suspend preclusion principles in claims litigation. Issues found against a party cannot be relitigated merely by characterizing the relitigation as reconsideration of a claim. Any other interpretation converts § 502(j) into a litigation whirlpool.

An appropriate order will be entered.

### JUDGMENT

For the reasons stated in the Memorandum filed contemporaneously herewith, the F.D.I.C. is entitled to partial summary judgment. It is ORDERED that the trustee is precluded to relitigate the validity or extent of the security interest of the Federal Deposit Insurance Corporation in the "Combine collateral."

IT IS SO ORDERED.