**In re TALLY WELL SERVICE, INC., Debtor.**

**Bankruptcy No. 84–09034.**

United States Bankruptcy Court, E.D. Michigan, N.D., Bay City.

Dec. 13, 1984.

---

**150**

Randall L. Frank, Bay City, Mich., for Trustee.

Lawrence R. Shoffner, Detroit, Mich., for S & G.

## MEMORANDUM OPINION ON S & G NATIONAL INVESTMENTS, INC.'S MOTION FOR SUMMARY JUDGMENT

ARTHUR J. SPECTOR, Bankruptcy Judge.

This matter comes before the Court upon motion of S & G National Investments, Inc., for summary judgment on its motion for relief from the automatic stay imposed by § 362(a) of the Bankruptcy Code. It presents the following issue for determination: in the context of a hearing on a motion for relief from the automatic stay, may the debtor properly assert counterclaims and defenses against the movant; and, if so, what weight should such matters be given by the Court?

On March 12, 1984, S & G National Investments (S & G) filed a motion seeking relief from the automatic stay. It asserted that the debtor, Tally Well Service, Inc. (Tally), then a Chapter 11 debtor-in-possession, had not offered adequate protection for S & G's property interest, that the debtor had no equity in the property and that the property was unnecessary for an effective reorganization. The property at issue is the cash proceeds of the debtor-in-possession's collection of accounts receivable. On June 15, 1984, the case was converted to Chapter 7. S & G continues its motion, but now against the trustee.

S & G claims that the debtor is indebted to it in an amount in excess of $248,000, and that it holds a valid and perfected security interest in accounts, contract rights, and general intangibles of the debtor, and in proceeds thereof. On October 22, 1984, S & G moved for summary judgment on its motion, alleging that since its security interest is valid and there was no dispute as to any material fact, it is entitled

to have the stay lifted as a matter of law. The trustee timely answered the motion and incorporated by reference allegations raised in a separate complaint he contemporaneously filed in this Court. Briefly, the trustee asserts that the transactions through which S & G acquired its secured status constituted fraudulent and preferential transfers which may be avoided pursuant to §§ 547 and 548 of the Bankruptcy Code, and that, for various reasons the "debt" should be treated as "equity" or otherwise subordinated to general claims. Accordingly, the trustee requests that the transactions be avoided, that S & G's claims be subordinated to the claims of unsecured creditors of the estate, that a set-off of any funds held by the trustee to which S & G asserts a claim be allowed, and that the Court declare that the sums advanced by S & G and certain others to Tally were contributions to capital. The total of preferences and fraudulent transfers exceeds the amount of S & G's claim. In its request for summary judgment, S & G argues that in adjudicating its request for relief from the stay, consideration of counterclaims and affirmative defenses such as those raised by the trustee are inappropriate.

In the instant case, S & G has produced evidence that it holds a security interest in the collateral, that the balance on the indebtedness secured thereby exceeds the value of those assets, and inasmuch as this is a case under Chapter 7 of the Bankruptcy Code, the property is not required for reorganization. It asserts that since it has made a *prima facie* showing of entitlement to the relief afforded by § 362 which the trustee has failed to rebut, it is entitled to have the stay lifted as a matter of law.

Case law exists supporting S & G's position. Section 362 does not expressly indicate the scope of a hearing on relief from the automatic stay; thus, many courts faced with this problem have turned to the legislative history accompanying the enactment of the Bankruptcy Reform Act of 1978 to determine Congress' intent. The relevant excerpt states that:

At the expedited hearing under subsection (e), and at all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustees to recover property of the estate or to object to the allowance of a claim.

H.Rep. 95–595, 95th Cong. 1st Sess (1977), 344, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6300. In light of these comments, several courts have refused to allow the introduction of evidence regarding the merits of counterclaims. These courts have held that the relief provided to secured creditors by § 362 requires an expedited hearing free from the delays inherent in adjudicating complex or collateral defenses raised by the debtor. *In re Georgia Steel, Inc.,* 19 B.R. 523 (Bankr.M.D.Ga. 1982); *In re High Sky, Inc.,* 15 B.R. 332 (Bankr.M.D.Pa.1981); *In re Born,* 10 B.R. 43 (Bankr.S.D.Tex.1981).

■ The thrust of S & G's argument misses the point. The Court fully agrees that a preliminary hearing under § 362 is not the proper time or place for a full *adjudication* of the trustee's claims against the creditor. Indeed, the trustee admits that such matters are beyond the scope of this proceeding. However, there is a tremendous difference between *adjudication* of the merits and mere *consideration* of counterclaims and defenses. Nothing in the comments of Congress indicates that it intended bankruptcy judges to blind themselves to the existence of factors which might bear on the ultimate resolution of a dispute between a debtor and a secured creditor, and in fact just the opposite is true:

However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded is a determination of such collateral claims on the merits at the hearing.

S.Rep. 95–989, 95th Cong.2d Sess. (1978), 55, U.S.Code Cong. & Admin.News 1978, p. 5841. While adjudication of the merits of potential counterclaims and affirmative defenses could seriously infringe upon the creditor's right to an expedited hearing, it is perfectly appropriate to acknowledge the presence of such claims in determining that creditor's equitable right to relief. 2 *Collier on Bankruptcy*, ¶ 362.08, 362–55 (15th ed. 1979).

Several courts have taken counterclaims into consideration to some extent in the context of § 362 hearings. In *United Companies Fin. Corp. v. Brantley*, 6 B.R. 178, 6 B.C.D. 932 (Bankr.N.D.Fla.1980), the court discussed what types of counterclaims and affirmative defenses should be considered. It held that those defenses which directly contest the actual validity of the creditor's lien or the amount of the claim should be evaluated by the court; in contrast, those causes of action which would only effect a reduction or set-off against the debt should be disregarded for the purposes of lift of stay litigation. *Id.*, 6 B.R. at 188. In *In re Davenport*, 34 B.R. 463 (Bankr.M.D.Fla.1983), it was held that preference and fraudulent transfer actions brought under §§ 547 and 548 of the Bankruptcy Code are among those claims which challenge the validity of the secured party's lien. The court also took note of these claims because it felt that the debtor would be unable to utilize these defenses in a subsequent state court action to foreclose the property. *See also In re Marta Group, Inc.*, 33 B.R. 634, 641 (Bankr.E.D. Pa.1983). At least one court has gone so far as to actually rule on the debtor's § 548 claim whether to lift the stay, since both the fraudulent transfer action and the creditor's claim of security arose out of the same transaction. *In re Dudley*, 38 B.R. 666 (Bankr.M.D.Pa.1984).

*Brantley, supra,* further explains the setting in which a preliminary hearing to lift the stay is conducted. Drawing again from the legislative history concerning § 362, which analogizes a preliminary hearing on the stay to a hearing on a preliminary injunction, the court states that the hearing "should proceed as any other injunctive proceeding under the established precepts relating to injunctive relief in federal courts in accordance with Rule 65 of the Federal Rules of Civil Procedure. In fact, the system is designed to follow the established federal pattern under Rule 65." *Id.*, 6 B.R. at 187. Using these standards as a guide, it is clear that a court is not limited to matters strictly relating to the estate's equity, but may consider matters generally relevant in deciding whether to grant or continue injunctive relief. The existence of other related disputes between the parties may be such an equitable consideration, especially when it may have a bearing on the debtor's equity, or lack thereof, in the assets in question.

■ S & G, as the movant for summary judgment, must show that no issues of material fact exist and that it is entitled to summary judgment as a matter of law. F.R.C.P. 56; Bankruptcy Rule 7056; *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 493 (6th Cir.1974); *Naph-Sol Refining Co. v. Murphy Oil Corp.*, 550 F.Supp. 297 (W.D.Mich.1982), *aff'd in part, rev'd in part; Mobil Oil Corp. v. Dept. of Energy*, 728 F.2d 1477 (Temp.Em.App.1983). With respect to its claim under § 362(d)(1) that it is not adequately protected, the motion for summary judgment must be denied. The sole asset of the debtor's estate at issue here is a bank account containing the proceeds of accounts receivable, which were subject to S & G's alleged security interest. These funds have been deposited by the trustee in an insured interest-bearing account and the trustee is bonded for an amount in excess of the proceeds. S & G has not alleged that the account is dimin-

ishing in value or is being misued by the trustee. In fact, it would be difficult for the Court to fashion relief which provided more adequate protection for S & G short of handing it the money directly.

 With regard to its request for relief under § 362(d)(2), S & G must show that there was no genuine issue as to the estate's lack of equity in the property. S & G has submitted proofs tending to show that, through the assumption of various employment and non-competition agreements, it possesses a facially valid security interest in Tally's accounts in excess of the deposits held by the trustee. The trustee has submitted no proofs, and relies upon the causes of action detailed in the adversary proceeding. A careful reading of the complaint satisfies the Court that it was filed in good faith and not interposed primarily for the purpose of delaying relief from the stay, presents theoretically valid causes of action, and alleges facts which, if proven, would enable the trustee to defeat S & G's claim to secured status. The essence of these claims is that S & G acquired its security interest through a series of fraudulent transfers and insider dealing. In the event these claims are successful, they are more than mere set-offs or reductions in credit; they would extinguish S & G's status and rights as a secured creditor, and in fact would require S & G to reimburse the estate. These claims are thus the sort that "strike at the heart" of the creditor's lien. *Brantley, supra*, 6 B.R. at 188. Therefore the Court must and does consider the issues raised by the trustee's adversary proceeding in determining whether the automatic stay should be lifted.

When all relevant factors are considered, including the nature of the security interest, the claims made in the adversary proceeding, the nature of the asset sought, the estate's potential equity in the property, and the relative harms to either party if the automatic stay is lifted,[1] we hold that S &

G's motion for summary judgment should be DENIED.

---

1. S & G refused to escrow the funds pending the outcome of the trustee's adversary proceeding. The trustee is, in effect, holding the funds in escrow since the Court will not allow distribution until the disputes are resolved.