**In re Donald P. GELLERT, Debtor.**

**VALE MILLS CORPORATION, Movant,**

v.

**Donald P. GELLERT, Debtor/Respondent,**

**Nancy H. Michels, Trustee/Respondent.**

**Bankruptcy No. 84–463.**

United States Bankruptcy Court, D. New Hampshire.

Dec. 30, 1985.

---

Joseph Szabo, Boston, Mass., Trustee.

Arthur O. Gormley, Jr., Nashua, N.H., for Vale Mills Corp.

Nancy Michels, Londonderry, N.H., Trustee/respondent.

Peter Lynch, Concord, N.H., for debtor/respondent.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case was heard before the court on the motion by Vale Mills Corporation for an order lifting the automatic stay provided by § 362 of the Bankruptcy Code, to permit the movant to proceed with a pending foreclosure action in the state court of its second and third mortgages on this Chapter 13 debtor's residential property. The case presents a recurrent pattern of misunderstanding of the scope of a § 362 stay relief hearing. It also demonstrates a common misapprehension as to the scope of relief available to a Chapter 13 debtor, in terms of an effective plan within the intended purpose of that Chapter, and therefore deserves more extended discussion than might otherwise be indicated.

### I.

■ On the basic "stay relief" facts there is little question on the evidence submitted to this court that the automatic stay should be lifted and the creditor given leave to proceed with foreclosure. The evidence establishes that the fair market value of the property in question is $142,000. Against this property is a valid first mortgage lien due the Meredith Village Savings Bank in excess of $50,000. Vale Mills holds a second mortgage recorded against this property in 1977 on which the present unpaid balance is in excess of $78,000. Vale Mills also holds a third mortgage against the property, recorded in 1978, upon which the present unpaid balance is in excess of $53,000. The total recorded liens against the property accordingly are in excess of $181,000., leaving no equity cushion to serve as adequate protection to Vale Mills as required under § 362(d)(1) of the Bankruptcy Code. The debtor has offered no other form of adequate protection.

It is uncontroverted that the debtor has never made any payments on either of the notes and mortgages held by Vale Mills. In addition, since the filing of the debtor's Chapter 13 in November of 1984 the debtor has ceased making monthly payments of $559.00 to the first mortgagee. This has effectively forced Vale Mills to bring current and continue to make the monthly payments to the first mortgagee to protect its second and third liens on the property.

### II.

■ The defendant contended at the hearings that Vale Mills held additional collateral, in the form of pledged corporate stock of Heliopticon Corporation which the debtor asserted had sufficient value to give Vale Mills equity cushion protection when all collateral was considered. Vale Mills however introduced evidence that Heliopticon Corporation has been defunct and inoperative for some seven years and that any value its corporate stock once had, by virtue of the assignment of patent and other licensing rights from Gellert on certain of his inventions to the corporation, had been completely eroded by the passage of time, the approaching expiration of the patents in question, and unfavorable changes in the

tax laws occurring since the time of the original transactions between the parties.

The burden therefore shifted to the debtor to show some substantial value in the corporate stock and I conclude from the evidence that the debtor failed to establish any such value. A "letter of interest" from an outside party was received into evidence, over a hearsay objection by the movant, for the limited purpose of showing that there was "some interest" in proceeding with the development of the product rights held by Heliopticon Corporation. This nonspecific evidence however is overweighed by the cumulative effect of the other testimony and evidence received on this point. In addition, the court takes notice that the debtor in its Chapter 13 Plan has rejected "any and all provisions of the 1976 license agreement with ESC/Heliopticon restricting debtor's income producing capacity." It is elementary bankruptcy law that rejection of any executory contract under § 365 of the Bankruptcy Code may not be *partial* rejection, i.e., the debtor must either assume or reject the executory contract *in toto*. *In re Nitec Paper Corp.*, 11 C.B.C.2d 959, 43 B.R. 492 (S.D.N.Y.1984); 2 *Collier on Bankruptcy* ¶ 365.01 at p. 365–9 and cases cited therein at n. 5 (15th ed. 1985).

This factor adds to the unreality of ascribing any significant value to the Heliopticon corporate stock for present purposes.

### III.

■ The lack of any clear equity with regard to the collateral securing the mortgage debts owing to Vale Mills, together with the lack of any other offer of adequate protection to Vale Mills by the debtor, raises a separate ground for lifting the automatic stay under § 362(d)(2) of the Bankruptcy Code. This provision provides that the stay should be lifted if there is no

equity and the property is "not necessary to an effective reorganization". This latter provision has been interpreted to mean not just that the property is essential if the debtor is going to be able to have a plan confirmed, but also that the court can find that there is a reasonable possibility that a successful reorganization can be formulated and confirmed within a reasonable period of time.[1]

■ With regard to this latter consideration in the present proceedings, the court notes that this is a Chapter 13 proceeding which under the Bankruptcy Code is designed to provide relief for an "individual with regular income". *Bankruptcy Code* § 109(e). The simplified provisions of Chapter 13, which do not even require creditor consent or acceptance of the plan, are intended for relatively simple extension plans under which the debtor pays all or a portion of his unpaid unsecured debts out of his regular source of income. *In the Matter of Cook*, 3 B.R. 480 (S.D.W.Va. 1980); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 117–118, 123 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 13 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5799, 5963, 6077–6078, 6084; 5 *Collier on Bankruptcy* ¶ 1300.02 at p. 1300–18 (15th ed. 1985).

It is apparent from the record that this debtor cannot hope to implement his plan solely from his regular source of income but must instead embark upon an entirely new business venture of developing and subdividing his sizeable residential property into twelve or more housing units. [*See Chapter 13 plan, paragraph five, filed April 24, 1985; see also paragraph four and seven of the debtor's answer to the motion to lift automatic stay.* ]

■ Essentially what we have here is not a simple Chapter 13 proceeding seeking

---

1. It is recognized that there is a conflict as to whether this general principle should apply in Chapter 13 since Chapter 13, unlike Chapter 11, does not use the word "reorganization" with regard to the plan submitted for confirmation by the court. See, e.g., *In re Pittman*, 4 CBC 2d 879, 881, 8 B.R. 299 (Dist.Ct., Colo., 1981); *Mat-*

*ter of Garner*, 4 CBC 2d 1417, 1421, 13 B.R. 799 (Bk'y Ct., S.D.N.Y., 1981). I believe that the *Pittman* position that § 362(d)(2)(B) *does* apply in Chapter 13 is the better reasoned approach. See also 2 *Collier on Bankruptcy* (15th Ed.), ¶ 362.07[2], p. 362–54 (1985).

to pay off debts over time out of regular earnings. What we have instead is an attempt to litigate in the bankruptcy court the failure of a complex commercial arrangement between Vale Mills and the debtor relating to various patents and licenses which were expected to produce substantial royalties during the 1976–1982 period. [*See Part IV below.*] While this is being litigated, the debtor proposes to start an entirely new real estate development project for which he has had no prior relevant business experience. Chapter 13 is not the appropriate procedural vehicle for obtaining this type of relief for this debtor. *Cf. In re Gavia,* 7 C.B.C.2d 813, 816, 24 B.R. 573 (9th Cir., B.A.P.1982); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 119 (1977) U.S.Code Cong. & Admin.News 1978, p. 6079; 5 *Collier on Bankruptcy* ¶ 1307.-01[5] at p. 1307–9—1307–10 (15th ed. 1985) (Congressional action in permitting individual business debtors to make use of Chapter 13 does *not* represent a presumption in any particular case that the debtor may not more appropriately belong in Chapter 11. Section 1307(d) permits the court to redirect the debtor into Chapter 11 where appropriate ...) (emphasis added); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 428 (1977) U.S.Code Cong. & Admin.News 1978, p. 6383 (Subsection (d) [of 11 U.S.C. § 1307] permits preconfirmation conversion to chapter 11 at any time on request of a party in interest. The court will exercise its sound discretion in determining whether to grant the request, based on the nature of the debtor's business and other similar factors.); 2 *Collier on Bankruptcy* ¶ 109.-05 at p. 109–21 (15th ed. 1985) (A purpose of [Chapter 13] is to allow the small sole proprietor, for whom the reorganization process provided in Chapter 11 is too cumbersome a procedure or otherwise inappropriate, to obtain relief under the Bankruptcy Code.)

### IV.

Against all of the foregoing reasons for granting relief from the automatic stay, the debtor sets forth in his answer further extensive breach of contract and/or oral modification assertions which he contends would establish that in fact none of the underlying debt securing the mortgages in question is in fact owing by virtue of said causes of action and resulting offsets. These allegations are in effect an attempt to set out affirmative defenses or counterclaims to cut down or eliminate the amount of Vale Mills' otherwise admitted debt for the advances Vale Mills made to or on behalf of the debtor.

Since relief from the automatic stay may now be obtained by simple motion, rather than by an adversary complaint as previously required under the Bankruptcy Rules, there is now no initiating complaint to which these allegations can respond in the form of an affirmative relief request in the normal procedural sense. See *Bankruptcy Code*, § 362(d); *Bankruptcy Rules*, Rules 4001 and 9014. To disregard this simple procedural truth would be to turn a stay relief hearing into a full-scale adversary lawsuit.

■ It has become fairly well settled that a secured creditor, forced to react to the automatic stay imposed by the mere filing of a bankruptcy petition by a debtor, is entitled under § 362 to a hearing on his request for relief from the stay concerned primarily with questions of adequate protection of his interest while the bankruptcy process goes forward. *In re Born,* 10 B.R. 43, 48 (S.D.Tex.1981); *In re High Sky, Inc.,* 15 B.R. 332, 337 (M.D.Pa.1981).

■ It has been held that "extraneous issues" raised by an attempt to assert affirmative defenses or counterclaims should not normally delay quick action upon the question of relief from the automatic stay. *In re Born,* 10 B.R. 43 (S.D.Tex.1981); *In re Simmons,* 13 B.R. 429, 431 (D.Minn. 1981); *In re Bennett,* 17 B.R. 843, 844 (D.N.M.1982).

■ On the other hand, it has also been held that the bankruptcy court in a § 362 stay relief hearing can "consider" such allegations, and their apparent substance or lack thereof, in deciding whether to exer-

cise its equitable discretion in granting relief from the automatic stay. *In re High Sky, Inc., supra* at 337–38; *In re Bialac,* 694 F.2d 625, 627 (9th Cir.1982); *United Companies Fin. Corp. v. Brantley,* 6 B.R. 178, 182–83 (N.D.Fla.1980); *In re Tally Well Service, Inc.,* 45 B.R. 149, 151–52 (E.D.Mich.1984).

Such consideration however does not authorize proceeding to a res judicata determination of such allegations on the merits, as would be the case in a separate adversary proceeding, should the same be brought before the bankruptcy court by the debtor or trustee and be determined to be within the jurisdiction of the court for that purpose. *In re Lockwood,* 14 B.R. 374, 377 (E.D.N.Y.1981); *United Companies Fin. Corp., v. Brantley, supra* at 182–83. *See also, In re Willis,* 48 B.R. 295, 303–04 (S.D.Tex.1985).

In the present case the evidence on these issues is essentially a formless morass of self-serving conclusory statements fired at each other by the contending parties. There is very little evidence as to the actual conduct of the operations, if any, of Heliopticon Corporation. There is no detailed accounting of the royalties and other advances covered by the various complex agreements between the parties dealing with the licensing of inventions to Heliopticon Corporation by the debtor. There is no detail as to the patents and licenses themselves, their current status, nor any substantial evidence as to value of the inventions actually involved. In short, there is little solid evidence to serve as the basis for any considered judgment by this court on the merits of the substantial controversies raised by the debtor's counter pleading.

This evidentiary morass is probably attributable to the very fact that the matter was not brought before the court by formal pleadings in a separate adversary mode, assuming jurisdiction of the same, which would have led to refinement of the pleadings and pre-trial proceedings that could have shaped up the issues for trial in a more meaningful way.

Suffice it to say that a quick review of the evidence actually submitted indicates that based on the documents involved, and upon the actual passage of money and benefits between the parties, it would appear that Vale Mills did in fact comply with all obligations it had under the various *written* contractual documents. The debtor seeks to avoid the effect of those documents by essentially attempting to show oral modification agreements between himself and the principal of Vale Mills. While this court is not prepared to say that there is no substance to that contention, the fact of any such agreement was hotly contested. The showing made before this court in the stay relief hearing does not support a conclusion that the debtor would be likely to prevail in any full-scale litigation on the matter.

It is important to note that *but for* the phenomenon of the automatic stay uniquely available under bankruptcy law, *Cf. Johnson v. Righetti,* 756 F.2d 738, 740 (9th Cir.1985), the debtor would have had to satisfy the four criteria established by the First Circuit in order to obtain a preliminary injunction against Vale Mills in the ordinary course of civil litigation on his contentions, i.e., (1) that he would suffer irreparable injury if the injunction were not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that debtor has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981); *Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981); *Lancor v. Lebanon Housing Authority,* 760 F.2d 361, 362 (1st Cir.1985).

I believe the same tests must be met if a debtor seeks to assert grounds extraneous to the specific statutory standards under § 362 of the Code. When a debtor moves away from those specific standards he in effect is seeking to convert the statutory automatic stay into an affirm-

ative judicial injunction supported only by such additional alleged grounds.

 The tough problem of course is to draw the line between "statutory grounds" and "extraneous grounds" for this purpose. Judge Sauls addressed essentially this question in his decision in *United Companies Corp. v. Brantley*, 6 B.R. 178 (N.D. Fla.1980). I agree essentially with Judge Saul's analysis but would rephrase the test somewhat differently: (1) A ground for opposing stay relief to a secured creditor is deemed a "specific statutory ground" if it deals with questions of equity, adequate protection, effective reorganization, and factual or legal *defenses* to the amount, priority, or validity of the lien in question; and (2) A ground is deemed an "extraneous ground" if it involves an *affirmative* attack upon the underlying debt by way of offset or counterclaim which would normally be set forth separately as an affirmative defense or counterclaim in ordinary civil litigation. These categories may well overlap in particular cases but they are useful "signposts" in context. While grounds in the second category will be "considered" by the court in a § 362 stay relief hearing, they will only be so considered in the summary manner appropriate to an equivalent request for a restraining order or preliminary injunction.

### V.

On balance, taking into consideration the entire circumstances of the relations between these parties since 1976, the court concludes that Vale Mills is entitled as an equitable matter to relief from the automatic stay inasmuch as cause is established under § 362(d)(1) and no equity or effective reorganization is shown under § 362(d)(2) of the Bankruptcy Code.

The debtor can still raise his contentions as to validity and amount of the secured debt in his pending action in the state court seeking delay in the foreclosure. It is appropriate however that his "free ride" by virtue of this Chapter 13 proceeding—which is essentially a substitute for the existing state court litigation—be terminated. The secured creditor is entitled under bankruptcy laws to adequate protection of its recorded mortgage lien and debt until and if there is a final determination that its mortgage lien is in fact invalid—or at least a preliminary showing has been made that the debtor is likely to prevail in full-scale litigation attacking the lien. That has not been shown here. It is left to the state court to determine what protection if any it will afford the debtor or the secured creditor while any litigation regarding the debtor's contentions goes forward.

A separate order vacating and lifting the automatic stay with regard to Vale Mills Corporation will be entered.