UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-1674

PAUL J. GRELLA, TRUSTEE,

Appellant,

v.

SALEM FIVE CENT SAVINGS BANK,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Torruella, Chief Judge,

Coffin and Campbell, Senior Circuit Judges.

Kevin P. Sweeney, with whom Alexander L. Cataldo, Timothy E.
McAllister and Cuddy Bixby were on brief for appellant.
Kevin J. Simard, with whom Isaac H. Peres and Riemer &
Braunstein were on brief for appellee.

December 6, 1994


TORRUELLA, Chief Judge. This appeal raises an issue TORRUELLA, Chief Judge.

frequently debated in bankruptcy courts around the country, but

never yet addressed by this court -- namely, the permissible

scope of a hearing on a motion for relief from the automatic stay

under 362 of the Bankruptcy Code.1 Paul J. Grella, trustee in

bankruptcy ("Trustee") for debtor The Beverly Corporation (the

"Debtor"), appeals the district court's affirmance of the

bankruptcy court's grant of summary judgment against Trustee in

favor of creditor Salem Five Cents Savings Bank (the "Bank").

Because we find that the bankruptcy court erred in entering

summary judgment against the Trustee and barring him on

principles of res judicata and collateral estoppel from pursuing

a counterclaim against the Bank, we reverse, and remand to the

bankruptcy court for further proceedings consistent with this

opinion.

I. BACKGROUND I. BACKGROUND

On January 26, 1988, the Debtor signed a $1,000,000

promissory note in favor of the Bank. The Debtor later

collaterally assigned various promissory notes and mortgages (the

"Seventeen Notes") to the Bank to secure that debt. Among the

Seventeen Notes was a $290,000 note from the Wellesley Mortgage

Corporation (the "Wellesley Note").

On September 4, 1992, the Debtor filed a voluntary

petition under Chapter 7 of the Bankruptcy Code, activating the


1 Unless otherwise noted, all citations of statutory sections
are to the Bankruptcy Reform Act of 1978, 11 U.S.C. 101 et
seq., as amended.

-2-

automatic stay provisions of 362. On December 18, 1992, the

Bank filed a Motion for Relief from the Automatic Stay pursuant

to 362(d)(1), seeking an order allowing the Bank to exercise

its contractual and state law rights and remedies against the

Debtor with respect to the Seventeen Notes.2 In its Motion for

Relief, the Bank claimed to have a "perfected security interest"

in the Seventeen Notes because it was "in sole and exclusive

possession" of the originals. The Bank did not state or allege

any other details regarding its security interest. The Bank

asserted, as a basis for relief, that the Debtor was unable to

provide the Bank with adequate protection for its collateral

position.

In his Response to the Bank's Motion for Relief from

Stay, the Trustee did not contest the Bank's Motion, but merely

stated that he had not had sufficient time to review the

pertinent files and determine the existence of any possible

defenses to the Bank's claims. The Trustee then requested that a

preliminary hearing on the Motion be scheduled, after sufficient

time to review the files.

After a hearing on the Bank's Motion for Relief from



2 Section 362(d)(1) provides in pertinent part:

On request of a party in interest and
after notice and a hearing, the court
shall grant relief from the stay . . .
for cause, including the lack of adequate
protection of an interest in property of
such party in interest. . . .

-3-

Stay on January 14, 1993,3 the Bankruptcy Court granted the

Motion and issued an order lifting the automatic stay as to the

Bank, and allowing the Bank to exercise "any and all of its

contractual and state law rights and remedies" with respect to

the Seventeen Notes. In neither the hearing nor the order did

the bankruptcy court make any findings about the status of the

Bank's security interest in the Seventeen Notes.

Having obtained relief from stay, the Bank filed a

Complaint on February 19, 1993, requesting a determination of its

secured status under 506(a),4 and a turnover and accounting of

funds by the Trustee as to the Seventeen Notes. In support of

its Complaint, the Bank alleged only that it had a "perfected

security interest" in the Notes because it was "in sole and

exclusive possession" of them. Again, the Bank offered no other

details or arguments regarding its interest in the Notes.

On March 29, 1993, the Trustee answered the Bank's

Complaint (the "Answer"), denying the Bank's allegation that it

had a perfected security interest in the Seventeen Notes because

of its exclusive possession. The Trustee asserted as an

affirmative defense that the Bank did not perfect its security



3 The Trustee did not attend this hearing, for reasons that are
unexplained in the record. Both the Bank and the district court
make much of his absence. While we agree with the district court
that a trustee's failure to attend a scheduled hearing is
troubling and not to be encouraged, we do not find his absence
relevant to our analysis here.

4 Section 506 allows a creditor to seek determination of the
status of a lien on property in which the debtor's estate has an
interest.

-4-

interest in the Wellesley Note prior to 90 days before the Debtor

filed its bankruptcy petition. The Answer also included a

Counterclaim, alleging that the Bank's interest in the Wellesley

Note is avoidable as a preferential transfer.5

On April 8, 1993, the Bank answered the Trustee's

counterclaim (the "Reply"). The Bank asserted, inter alia, on

the grounds of estoppel, waiver and collateral estoppel, that the

Trustee was barred from pursuing his preference counterclaim

because he failed to file or pursue any objection to the Bank's

Motion for Relief from Stay.

On July 7, 1993, the Trustee moved for summary judgment

on his preference counterclaim. On August 3, 1993, the Bank

opposed that motion and cross-moved for summary judgment on the

ground that either res judicata or collateral estoppel barred the

counterclaim, as the issue of the "validity" of the Bank's

interest in the Notes was decided when the Bankruptcy Court

granted the relief from stay. The Bankruptcy Court denied both

summary judgment motions, finding genuine issues of material fact

to exist regarding "the status of the holder of the note." With

respect to the Bank's res judicata and collateral estoppel


5 A "preference" is a transfer of a debtor's assets during a
specified pre-bankruptcy period that unjustifiably favors the
transferee over other creditors. In re Melon Produce, Inc., 976
F.2d 71, 73 (1st Cir. 1992). Section 547 allows a bankruptcy
trustee, in certain circumstances, to avoid preferential
transfers of an interest of the debtor if the transfer was made
within 90 days before the date of the filing of the bankruptcy
petition. The creation of a perfected security interest in
property during this 90-day preference period is itself a
preferential transfer if it meets the other requirements of
547. In re Melon Produce, Inc., 976 F.2d at 74.

-5-

arguments, the Bankruptcy Court did not make a ruling, but merely

said that it was a "legal issue which we can get into later."

On November 16, 1993, the Trustee filed a motion for

summary judgment on the res judicata and collateral estoppel

issues, arguing that the doctrines were inapplicable to the

Trustee's preference counterclaim, as there had been no

adjudication on the merits of the Bank's security interest during

the relief from stay proceeding. On the first page of his

Memorandum of Law in support of the Motion for summary judgment,

the Trustee stated:

Only the note entitled "Wellesley Mort.
Corp. of April 25, 1990" (the Wellesley
Note) . . . is presently in dispute. The
other notes and mortgages . . . have been
determined [by the Trustee] to be
perfected security interests in favor of
[the Bank].

Three days later, the Trustee filed a Motion for Leave

to Amend his Memorandum of Law, seeking to amend this statement

of facts. The Trustee explained that the original memorandum was

written some months before, and at that time the Trustee thought

that there was no dispute as to sixteen of the Seventeen Notes.

Sometime after the original memorandum was written, but before it

was filed, the Trustee apparently determined that he did indeed

dispute the Bank's interest in the other notes as well, but had

neglected to edit his memorandum before filing it with the court.

The Bank objected to the Trustee's Motion for summary judgment on

the res judicata and collateral estoppel issues, and cross-moved

for summary judgment.

-6-

After a hearing on the motions, the bankruptcy court

granted summary judgment in favor of the Bank.6 In its

decision, the court stated without explanation that it was

treating the Trustee's preference counterclaim as an "affirmative

defense." Although the court recognized that the hearing on

relief from stay was a preliminary one, the court went on to

state:

The question of the validity and
perfection of a security interest which
is the subject of a request for relief
from stay goes to the heart of the issues
before the court [during a relief from
stay hearing]. If the security interest
were invalid or unperfected, there would
be no cause for relief from stay and the
request would be denied . . . . The
Trustee could have raised the perfection
issue [underlying his preference
counterclaim] at the hearing on the
motion for relief. If he felt that I was
wrong in denying him additional time to
respond, an appeal from my order was
appropriate. Having had the potential
for one bite at the apple, he cannot
relitigate the issue at this time.

The court reasoned that the perfection issue was necessarily,

implicitly decided in the relief from stay proceedings, and thus

granted summary judgment in the Bank's favor "as to the entire

adversary proceeding" on collateral estoppel or res judicata

grounds.

On May 23, 1994, the district court issued a Memorandum

and Order affirming the bankruptcy court's decision. The


6 Although the court did not explicitly rule on the Trustee's
Motion for Leave to Amend his original memorandum of law, the
court stated in its Decision that the parties agreed that the
only note in dispute was the Wellesley Note.

-7-

district court ruled that collateral estoppel bars the Trustee's

preference counterclaim, and entered judgment in the Bank's favor

on May 25, 1994.

II. DISCUSSION II. DISCUSSION

A. Standard of Review A. Standard of Review

In an appeal from district court review of a bankruptcy

court order, we independently review the bankruptcy court's

decision, applying the "clearly erroneous" standard to findings

of fact and de novo review to conclusions of law. In re SPM Mfg.

Corp., 984 F.2d 1305, 1310-11 (1st Cir. 1993) (citations

omitted). No special deference is owed to the district court's

determinations. Id. at 1311.

B. Claim and Issue Preclusion B. Claim and Issue Preclusion

To evaluate the bankruptcy court's decision, we must

consider the doctrine of res judicata generally. We have

explained that there are two different aspects of res judicata --

claim preclusion and collateral estoppel (also called issue

preclusion). Dennis v. Rhode Island Hosp. Trust, 744 F.2d 893,

898 (1st Cir. 1984). The essential elements of claim preclusion

are: (1) a final judgment on the merits in an earlier action; (2)

an identity of parties or privies in the two suits; and (3) an

identity of the cause of action in both suits. Aunyx Corp. v.

Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992), cert. denied,

U.S. , 113 S. Ct. 1416 (1993). Once these elements are

established, claim preclusion also bars the relitigation of any

issue that was, or might have been, raised in respect to the

-8-

subject matter of the prior litigation. Dennis, 744 F.2d at 898

(citations omitted) (emphasis in original).

The principle of collateral estoppel, or issue

preclusion, bars relitigation of any factual or legal issue that

was actually decided in previous litigation "between the parties,

whether on the same or a different claim." Dennis, 744 F.2d at

899 (quoting Restatement (Second) of Judgments, 27 (1982))

(emphasis in original). When there is an identity of the parties

in subsequent actions, a party must establish four essential

elements for a successful application of issue preclusion to the

later action: (1) the issue sought to be precluded must be the

same as that involved in the prior action; (2) the issue must

have been actually litigated; (3) the issue must have been

determined by a valid and binding final judgment; and (4) the

determination of the issue must have been essential to the

judgment. See NLRB v. Donna-Lee Sportswear Co., Inc., 836 F.2d

31, 34 (1st Cir. 1987); In re Sestito, 136 B.R. 602, 604 (Bankr.

D. Mass. 1992); In re Dubian, 77 B.R. 332, 337 (Bankr. D. Mass.

1987). An issue may be "actually" decided even if it is not

explicitly decided, for it may have constituted, logically or

practically, a necessary component of the decision reached in the

prior litigation. Dennis, 744 F.2d at 899 (emphasis in

original).

As the Trustee points out, it is unclear whether the

bankruptcy court relied on claim or issue preclusion in entering

summary judgment and barring the Trustee's preference

-9-

counterclaim. Although the court's decision refers to claim

preclusion, it is based on an issue preclusion analysis. The

district court likewise expressly based its reasoning on issue

preclusion principles. Both the Bank and the Trustee contend

that the doctrine of issue preclusion is the appropriate basis

for our analysis here, and we agree. Thus, the broad issue

before us is whether all of the elements of issue preclusion, set

forth above, are met. In order to make this determination,

however, we must first consider exactly what issues were

adjudicated during the initial action, a hearing on a motion for

relief from stay.

C. Issues Determined During a 362(d) Hearing C. Issues Determined During a 362(d) Hearing

The Trustee argues that the allowance of a motion for

relief from stay does not preclude the later prosecution of a

preference action, as a determination of the non-avoidability of

a lien under 547 is not, logically or practically, part of a

court's decision to grant relief from stay. In support of this

position, the Trustee cites the Seventh Circuit's decision of

Matter of Vitreous Steel Prods. Co., 911 F.2d 1223 (7th Cir.

1990), and urges us to adopt that court's reasoning.

In Vitreous Steel, the appeals court held that a

decision to lift the automatic stay pursuant to 362(d) does not

preclude the prosecution under 547 of an adversary complaint.

Vitreous Steel, 911 F.2d at 1234. The court reasoned that the

possible avoidability of a transfer to a creditor under 547 is

not an issue proper for adjudication by a court during a hearing

-10-

on a motion to lift the automatic stay, and accordingly found

that the bankruptcy court erred in barring a trustee's

preferential transfer claim on collateral estoppel grounds. Id.

The Vitreous Steel holding rests on persuasive grounds.

First, as the Seventh Circuit noted, it is consistent with the

statutory scheme established by 362, and particularly with the

purpose of the relief from stay provision of 362(d). Id. at

1232. As soon as a petition in bankruptcy is filed, the

automatic stay provisions of 362 take effect, preventing all

pre-petition creditors from taking action to collect their debts.

In certain situations, such as when a creditor has a security

interest in the debtor's property and the value of the collateral

is less than the amount of the debt, bankruptcy proceedings may

only delay the inevitable result. There may be no reason to make

the creditor wait for the distribution of the estate, and indeed,

early release of the property may aid administration of the

estate by allowing a quicker determination of the amount of an

undersecured creditor's claim. Id. at 1231-32. Thus, Congress

included the provision for relief from stay under 362(d),

allowing bankruptcy courts to lift the stay as to certain

creditors if grounds for relief are presented. Id. at 1232; see

11 U.S.C. 362(d). These grounds are the adequacy of protection

for the creditor, the debtor's equity in the property, and the

necessity of the property to an effective reorganization. 11

U.S.C. 362(d). That the statute sets forth certain grounds for

-11-

relief and no others indicates Congress' intent that the issues

decided by a bankruptcy court on a creditor's motion to lift the

stay be limited to these matters. See 11 U.S.C. 362(d).

Moreover, the hearing on a motion for relief from stay

is meant to be a summary proceeding, and the statute requires the

bankruptcy court's action to be quick. Vitreous Steel, 911 F.2d

at 1232; see 11 U.S.C. 362(e). Section 362(e) provides that

a bankruptcy court must hold a preliminary hearing on a motion to

lift the stay within thirty days from the date the motion is

filed, or the stay will be considered lifted. A final hearing

must be commenced within thirty days after the preliminary

hearing. Vitreous Steel, 911 F.2d at 1232 (citing Fed. R. Bankr.

P. 4001(a)(2)); see 11 U.S.C. 362(e). 

The limited grounds set forth in the statutory

language, read in the context of the overall scheme of 362, and

combined with the preliminary, summary nature of the relief from

stay proceedings, have led most courts to find that such hearings

do not involve a full adjudication on the merits of claims,

defenses, or counterclaims, but simply a determination as to

whether a creditor has a colorable claim to property of the

estate. See, e.g., Estate Contruction Co. v. Miller & Smith

Holding Co., Inc., 14 F.3d 213, 219 (4th Cir. 1994) (hearings to

lift the stay are summary in character, and counterclaims are not

precluded later if not raised at this stage); Vitreous Steel, 911

F.2d at 1232 (questions of the validity of liens are not at issue

in a 362 hearing, but only whether there is a colorable claim

-12-

on property); In re Johnson, 756 F.2d 738, 740 (9th Cir.), cert.

denied, 474 U.S. 828 (1985) (relief from stay hearings are

limited in scope to adequacy of protection, equity, and necessity

to an effective reorganization, and validity of underlying claims

is not litigated); Nat'l Westminster Bank, U.S.A. v. Ross, 130

B.R. 656, 658 (Bankr. S.D.N.Y.), aff'd, 962 F.2d 1 (2d Cir. 1991)

(decision to lift stay does not involve determination of

counterclaims, and thus those claims are not precluded later); In

re Quality Elect. Ctrs., Inc., 57 B.R. 288, 290 (Bankr. D.N.M.

1986) (relief from stay proceedings limited to whether the moving

creditor has a colorable claim to a perfected security interest);

In re Pappas, 55 B.R. 658, 660-61 (Bankr. D. Mass. 1985)

(trustee's counterclaims may be considered, though not

adjudicated, at relief from stay proceedings);7 In re Geller, 55

B.R. 970, 974-75 (Bankr. D.N.H. 1985) (although a bankruptcy

court may consider counterclaims during a relief from stay

hearing, it is not authorized to a res judicata determination of



7 The Bank cites In re Pappas in support of its argument that
preference counterclaims are among claims that challenge the
"validity" of a creditor's lien, and thus are part of the relief
from stay determination. The Bank's reliance on that case,
however, is misplaced. As the Trustee points out, that case
involved the unusual factual situation of a creditor trying to
prevent a trustee from pursuing a defense to a motion for relief.
The Pappas court recognized that while a 362 motion for relief
hearing is not the proper forum for deciding counterclaims, a
court need not blind itself to such counterclaims, and may
consider them where raised. In re Pappas, 55 B.R. at 660-61.
The court went on to discuss the distinction between
"considering" and "adjudicating" such claims, and specifically
stated that claims that challenge the validity of a lien "will be
considered, though not adjudicated, at the hearing on relief from
stay." Id. at 661. The Bank somehow overlooked this statement.

-13-

such claims on their merits); In re Tally Well Serv., Inc., 45

B.R. 149, 151-52 (Bankr. E.D. Mich. 1984) (a court may merely

consider counterclaims and defenses at a relief from stay

hearing, but such hearing is not the proper proceeding for those

claims' adjudication); cf. In re Shehu, 128 B.R. 26, 28-29

(Bankr. D. Conn. 1991) (acknowledging the narrow scope of

hearings on relief from stay, but allowing the debtor to present

evidence on "indirect defenses" going to offset the amount of the

secured debt, for the limited purpose of determining whether the

debtor has equity in the property).

These courts' interpretation of 362 also comports

with the statute's legislative history:

At the expedited hearing under subsection
(e), and at all hearings on relief from
the stay, the only issue will be the
claim of the creditor and the lack of
adequate protection or existence of other
cause for relief from the stay. This
hearing will not be the appropriate time
at which to bring in other issues, such
as counterclaims against the creditor on
largely unrelated matters. Those
counterclaims are not to be handled in
the summary fashion that the preliminary
hearing under this provision will be.
Rather, they will be the subject of more
complete proceedings by the trustees to
recover property of the estate or to
object to the allowance of a claim.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 344 (1977), reprinted

in 1978 U.S. Code Cong. & Admin. News 5787, at 6300 (emphasis

added). The Senate report reiterates this explanation, but also

adds:

However, this would not preclude the
party seeking continuance of the stay

-14-

from presenting evidence on the existence
of claims which the court may consider in
exercising its discretion. What is
precluded is a determination of such
collateral claims on the merits at the
hearing. 

S. Rep. No. 95-989, 95th Cong., 2d Sess. 55, reprinted in 1978

U.S. Code Cong. & Admin. News 5787, at 5841 (emphasis added).

The relief from stay procedures established by the

Bankruptcy Rules also point to the limited scope of the hearing.

Relief from the stay is obtained by a simple motion, Fed. R.

Bankr. P. 4001, and it is a "contested matter," rather than an

adversary proceeding. Fed. R. Bankr. P. 9014. See Advisory

Committee Note to Fed. R. Bankr. P. 7001 ("[R]equests for relief

from the automatic stay do not commence an adversary

proceeding."). In contrast, all actions to determine the

validity of a lien, such as a preference action under 547,

require full adjudication on verified pleadings, and must be

litigated in adversary proceedings. Fed. R. Bankr. P. 7001. To

allow a relief from stay hearing to become any more extensive

than a quick determination of whether a creditor has a colorable

claim would turn the hearing into a full-scale adversary lawsuit,

In re Gellert, 55 B.R. at 974, and would be inconsistent with

this procedural scheme.

We agree with the Trustee's argument that allowing

these hearings to become adversary proceedings would also force

the untimely, expedited adjudication of complex and critical

issues during the early stages of the case, on the basis of the

movant creditor's unverified motion for relief. Trustees would

-15-

be forced to assert (and win) not only objections to motions for

relief from stay, but any and all possible defenses and

counterclaims to the underlying claims of the movant creditor, or

risk being precluded from raising them later. Bankruptcy courts

would likewise be forced to determine the validity, priority and

extent of a lien during the relief from stay hearing, and the

creditor's motion would thus become a "substitute" for the normal

adversary proceedings on the merits. See In re Quality

Electronics, 57 B.R. at 290.

Moreover, the Bankruptcy Code specifically provides

that a trustee has two years after appointment or until the close

of the case to commence a 547 preference action. Section

546(a)(1). A relief from stay proceeding, conversely, is usually

commenced very shortly after the bankruptcy petition is filed,

and, as explained above, must be completed no more than sixty

days from the filing of the motion for relief. Forcing trustees

to raise their counterclaims within that short period, usually

during the nascent stages of a bankruptcy case, would in effect

allow movant creditors to drastically reduce the two-year

limitations period set forth in the Code. Not only is this

result patently unfair and inefficient, it renders the Bankruptcy

Code's statutes of limitations provision irrelevant -- a result

we cannot endorse.

For all these reasons, we find that a hearing on a

motion for relief from stay is merely a summary proceeding of

limited effect, and adopt the Vitreous Steel court's holding that

-16-

a court hearing a motion for relief from stay should seek only to

determine whether the party seeking relief has a colorable claim

to property of the estate. The statutory and procedural schemes,

the legislative history, and the case law all direct that the

hearing on a motion to lift the stay is not a proceeding for

determining the merits of the underlying substantive claims,

defenses, or counterclaims. Rather, it is analogous to a

preliminary injunction hearing, requiring a speedy and

necessarily cursory determination of the reasonable likelihood

that a creditor has a legitimate claim or lien as to a debtor's

property.8 If a court finds that likelihood to exist, this is

not a determination of the validity of those claims, but merely a

grant of permission from the court allowing that creditor to

litigate its substantive claims elsewhere without violating the

automatic stay.

This is not to say that bankruptcy courts can never



8 Indeed, the legislative history of 362 suggests this very
analogy:

[T]he automatic stay is similar to a
temporary restraining order. The
preliminary hearing [on a motion for
relief from stay] is similar to the
hearing on a preliminary injunction,
. . . . The main difference lies in which
party must bring the issue before the
court. While in the injunction setting,
the party seeking the injunction must
prosecute the action, in proceedings for
relief from the automatic stay, the
enjoined party must move.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 344 (1977), reprinted
in 1978 U.S. Code Cong. & Admin. News 5787, at 6300.

-17-

consider counterclaims and defenses, including preference

counterclaims, during a relief from stay hearing. As several

bankruptcy courts have discussed, there is a significant

difference between mere consideration of claims and final

adjudication on the merits. See In re Pappas, 55 B.R. at 660; In

re Gellert, 55 B.R. at 974-75; In re Tally Well, 45 B.R. at 152.

Certainly, a court may take into account any matter that bears

directly on the debtor's equity, or that clearly refutes a

creditor's claim to the property. For example, if a trustee

raises a defense to a creditor's claim at the relief from stay

hearing, the court need not ignore this defense, but may consider

it when deciding whether to lift the stay. If, however, the stay

is not lifted, that creditor is not barred forever from seeking

payment. It must simply comply with the automatic stay, and wait

with the other creditors for the estate's administration.

Conversely, if the stay is lifted, the creditor may

then prosecute its claim in subsequent litigation. The trustee

is not precluded from raising defenses or counterclaims in those

subsequent proceedings, because the defense was not fully

adjudicated, but only considered, during the preliminary hearing.

As a matter of law, the only issue properly and necessarily

before a bankruptcy court during relief from stay proceedings is

whether the movant creditor has a colorable claim; thus, a

decision to lift the stay is not an adjudication of the validity

or avoidability of the claim, but only a determination that the

creditor's claim is sufficiently plausible to allow its

-18-

prosecution elsewhere.

The Bank nevertheless submits that the Vitreous Steel

analysis is "flawed," and argues:

[A] determination (though not necessarily
a final one) as to a creditor's security
interest is an integral part of any
decision regarding the lifting of the
stay . . . if the creditor's security
interest can be avoided for any reason,
there is no cause to grant the creditor
relief from stay because the creditor
lacks an interest in the debtor's
property.

(Emphasis in original). Essentially, the Bank contends that

because establishing the validity of a creditor's security

interest is an essential element of a relief from stay, the fact

that the stay was indeed lifted necessarily implies that the

security interest is valid.

This argument is meritless for two reasons. First, it

ignores the important distinction between the consideration and

adjudication of an issue. In a relief from stay hearing, the

only issue properly before the court, and thus the only one

actually adjudicated, is whether the stay should be lifted

because a creditor has shown a colorable claim. Put another way,

and employing the preliminary injunction analogy discussed above,

a creditor must show a reasonable likelihood that it has a

meritorious claim, and the court may consider any defenses or

counterclaims that bear on whether this reasonable likelihood

exists. If the stay is lifted, however, what has been actually

adjudicated is only that the creditor has shown this reasonable

likelihood. It is not a ruling on the merits of the underlying

-19-

claim.9

Second, the Bank's argument also ignores the difference

between a void claim or lien, and a valid yet voidable lien. A

creditor's valid, perfected security interest in the debtor's

property may nevertheless be voidable as a preferential transfer

under 547. In re Melon Produce, 976 F.2d at 74 (the creation

of a perfected security interest in property is itself a

preference, when the perfection takes place during the statutory

preference period and other criteria are satisfied). A creditor

may therefore have a lien that is sufficient to justify lifting

the stay, yet ultimately avoidable by the trustee as a

preferential transfer under 547. Thus, the Bank's contention

that "if the creditor's security interest can be avoided for any

reason, there is no cause to grant the creditor relief from stay"

is simply wrong.

The only case that the Bank cites purportedly

supporting its argument that a relief from stay proceeding can

have preclusive effect on a subsequent counterclaim is In re

Monument Record Corp., 71 B.R. 853 (Bankr. M.D. Tenn. 1987).

This case, however, is entirely distinguishable. In Monument

Record, the creditor and the trustee entered into a specific



9 The Bank also urges us to reject the Vitreous Steel court's
"rigid rule" and adopt a "flexible approach" which takes unique
circumstances into account. We will not, however, overlook
Congressional intent, statutory language, and well-settled
procedural machinery that all limit the issues properly
adjudicated in such hearings. It is perhaps not surprising that
the Bank fails to cite any authority for its "flexible approach"
argument, as it lacks any legal or practical basis.

-20-

agreement, in order to resolve the motion for relief from stay,

stipulating that the creditor's security interest was a valid

first lien. Id. at 855. The bankruptcy court held that this

specific agreement precluded the trustee from challenging in a

later adversary proceeding the perfection of the security

interest. Id. at 864. We agree with the Trustee that the

parties' express agreement was the crux of the Monument Record

court's ruling, and find that decision is logically limited to

those unique circumstances.

Applying our holding to the facts presented here, it is

evident that the bankruptcy court's order lifting the automatic

stay upon the Bank's motion did not have preclusive effect on the

Trustee's counterclaims. The only issue properly before the

court during that hearing was whether the Bank's claim was

colorable, or sufficiently plausible, to lift the stay. The

court did not, and indeed, could not adjudicate the substantive

merits of either the Bank's claim, or any possible defenses or

counterclaims.10 Thus, the issue raised by the Trustee's


10 This is so even if the Trustee had attended the hearing and
actually raised any defenses. Thus, the Trustee's absence at the
hearing is irrelevant. The Bank contends that the Trustee's
failure to deny the allegations in the Bank's motion for relief,
and to attend the hearing, constitutes a "judicial admission" of
the validity of the Bank's security interest. The Bank is
misguided. Because a court cannot properly adjudicate the
validity of a lien during relief from stay proceedings, a party
also cannot "admit," with preclusive, binding effect, to a
claim's validity. See In re Torco Equip. Co., 65 B.R. 353, 355
(Bankr. W.D. Ky. 1986) (preference claim is not a compulsory
counterclaim to a motion for relief because of the limited scope
of 362 proceedings). To hold otherwise would require a trustee
to plead any and all affirmative defenses and counterclaims
during the relief from stay proceedings, or be forever barred.

-21-

preference counterclaim was not before the court at the relief

from stay hearing, was not actually (or even implicitly)

litigated, and was not essential to the court's decision to lift

the stay. Therefore, the elements of issue preclusion are not

met here.11 Accordingly, both the bankruptcy court and the

district court erred in precluding the Trustee's later

counterclaim on those grounds.



As we have explained, this is untenable.

11 Moreover, because a relief from stay proceeding merely
removes a bar to a creditor from prosecuting its substantive
claims, and does not determine the merits of the underlying
claim, there is no identity of cause of action between a relief
from stay proceeding and an adversary proceeding on the claim's
validity. Thus, the elements of claim preclusion are likewise
not met here.

-22-

D. The Trustee's 547 Preference Counterclaim D. The Trustee's 547 Preference Counterclaim

1. The Wellesley Note 1. The Wellesley Note

With respect to the Trustee's counterclaim under 547,

the bankruptcy court ruled that a genuine issue of material fact

exists as to the status of the Bank's security interest in the

Wellesley Note, and we find that the record supports the court's

finding.12 We therefore remand the case to the bankruptcy

court for further proceedings on the validity of the Bank's claim

and the Trustee's counterclaim as to the Wellesley Note.

2. The other sixteen of the Seventeen Notes  2. The other sixteen of the Seventeen Notes

Regarding the parties' dispute over the other sixteen

of the Seventeen Notes, the Trustee requests, in the "Conclusion"

section of his brief, that we "strike any finding that the

Trustee has agreed that the Seventeen Notes other than the

Wellesley Note are 'valid' security interests." In a final

footnote to his reply brief, the Trustee maintains that he is not

contending that his motion to amend should have been allowed, but

only that genuine factual issues exist regarding the validity, as

opposed to the perfection, of the other sixteen of the Seventeen

Notes, and thus summary judgment as to those notes is improper.

He offers no further support for this statement.

Regardless of the meaning or merit of the Trustee's


12 While the Bank contends that its security interest in the
Wellesley Note was perfected by possession prior to the 90-day
statutory preference period, the Trustee contends that the Bank
did not actually have possession of the Note until about two
months before the Debtor filed its bankruptcy petition. Both
parties' contentions have support in the record, thus creating a
genuine factual issue.

-23-

argument as to the other sixteen of the Seventeen Notes, we agree

with the Bank that the Trustee has not properly presented or

argued this issue on appeal. We have warned litigants that

issues averted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation, are deemed waived for purposes

of appeal. Willhauck v. Halpin, 953 F.2d 689, 700 (1st Cir.

1991). Parties must spell out their arguments squarely and

distinctly, or "forever hold their peace." Id. In his 50-page

brief, the Trustee did not raise or address the issue of the

other sixteen notes at any point except for the one-sentence

statement, unsupported by any argument or case law, in his

conclusion. Even when the Bank pointed out this flaw, the

Trustee did not more fully develop the argument in his reply

brief, but deemed it worthy of only a cursory footnote. This is

simply insufficient presentation and argumentation of the issue

for any meaningful analysis, and we therefore deem it waived.13

III. CONCLUSION III. CONCLUSION

For the foregoing reasons, we conclude that both the

bankruptcy court and the district court erred in barring the

Trustee's preference counterclaim as to the Wellesley Note on the

grounds of either claim or issue preclusion. Accordingly, we

remand to the bankruptcy court for adjudication on the merits of



13 Because the argument is waived, we do not address it, and we
likewise do not address the Bank's counter-arguments that the
Trustee's statements in his Memorandum of Law are "admissions,"
and that the Trustee is estopped from denying his statements.

-24-

the Bank's security interest and the Trustee's counterclaim

regarding the Wellesley Note.

-25-